# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

SAILAK, LLC and SUMALATHA SATOOR,

    Plaintiffs,

v.

FORSYTH COUNTY, GEORGIA,

    Defendant.

CIVIL ACTION NO.
2:17-CV-00052-RWS

## **ORDER**

This case comes before the Court on Defendant's Motion for Partial Summary Judgment [17]. After reviewing the record, the Court enters the following Order.

## **Background**

Plaintiffs' claims arise out of a dispute regarding the desired use of Lot 38 of the Bald Ridge on Lanier subdivision in Forsyth County, Georgia, by its owner, Plaintiff Sailak, LLC.

On February 25, 1983, long before Plaintiff Satoor purchased Lot 38, the developers and then-owners of the Bald Ridge on Lanier subdivision ("Bald Ridge") recorded Restrictive Covenants Pertaining to Bald Ridge on Lanier

("First Bald Ridge Declaration") with Forsyth County at Deed Book 236, Pages 604–607. (Pl.'s Statement of Additional Material Facts ("Pls.' SAMF"), Dkt. [19-1] ¶ 5.) The document purports to establish restrictive covenants for Bald Ridge, "consisting of various lots for building purposes in Forsyth County . . . and shown on the attached Exhibit 'A' which is made a part hereof." (Pls.' SAMF. Ex. D, Dkt. [19-1], at D-1.) Although the First Bald Ridge Declaration references an "Exhibit A," no such document or legal description was recorded at the time. (Pls.' SAMF, Dkt. [19-1] ¶ 6.) The First Bald Ridge Declaration does, however, state that the restrictions therein "shall become effective immediately, shall run with the land," and "apply to all of the said lots or any of them hereafter." (Pls.' SAMF, Ex. D, Dkt. [19-1], at D-1.) Of particular relevance are the following purported restrictive covenants, enumerated in the First Bald Ridge Declaration:

> 2.
> No proposed building, fences, or other structure shall be erected, placed or altered on any lot in the subdivision until after the building plans and specifications, including plot and site plans showing the proposed location of such building or structure, drives and parking areas have been approved in writing by the [Architectural Control Committee ("A.C.C.")], its agents, successors or assigns, as to the quality of design, workmanship, materials, harmony of design with existing structures, location

AO 72A
(Rev.8/82)

with respect to topography and finish grade elevation. Refusal or approval of plans, location or specifications by the A.C.C. may be based upon any ground, including purely aesthetic grounds, which in the sole discretion of the A.C.C. shall seem in keeping with the common plan for development of the subdivision. . . .

3.

All lots in said area shall be used for residential purposes. Structures erected, altered, placed or permitted on any lot, shall consist only of one (1) detached single family dwelling not to exceed two stores (sic) in height and (1) accessory building which may include a detached private garage, provided the use of such accessory building does not include any activity normally conducted as a business. . . .

4.

The intent of these covenants is to provide for a natural wooded environment. Therefore, alteration of the natural environment on any lot is limited to that which is required for the construction of an approved dwelling, necessary landscaping, and accessory building. Nothing herein contained, however, shall be construed as preventing the use of the same for walks, drives, and other appropriate private facilities, the planting of trees or shrubbery, the growing of flowers or ornamental plants for the purpose of beautifying said premises.

. . .

6.

No trailers, campers, tents, shacks, barns or other outbuildings except as permitted herein in paragraph 3 shall be erected on a lot at any time, nor shall any structure or device of a temporary character be used as a residence or for camping.

. . .

16.

No trade, commercial venture, or activity shall be carried on upon any lot.

(Id. at D-1 to D-3.)

On June 8, 1983, after recording the First Bald Ridge Declaration, the developer-owners of Bald Ridge sold Lot 38 therein by deed recorded at Book 241, Page 710. (Pls.' SAMF, Ex. E, Dkt. [19-1], at E-1.) This deed to the first buyer of Lot 38 stated that it was "subject to subdivision restrictions of record and recorded at Deed Book 236, pages 604–607." (Id.) Less than a year later, on April 1, 1984, the developer-owners of Bald Ridge executed a Waiver of Certain Restrictive Covenants with Respect of Lot 38 Bald Ridge on Lanier Subdivision ("Waiver"), recorded with Forsyth County at Book 262, Page 299. (Pls.' SAMF, Ex. F, Dkt. [19-1], at F-1.) The Waiver purported to waive "the restrictive covenants of record with respect to paragraphs 1, 2, 6, and 13 of said covenants in order that Grantees, their heirs and assigns, may use said property for the occupancy on said property for a horse or horses to be used by the residents of Lot 38 of said subdivision." (Id.) The document continued:

> Nothing herein contained shall grant, authorize, approve or waive rights to Grantees, their heirs or assigns, to conduct a commercial operation for the renting of stalls or the like. It is the intent herein to permit the occupants of the home located on Lot 38 to be able to use the property for occupancy of a horse or horses for the personal pleasure of the owner and family members of said lot.

(Id. at F-1 to F-2.) Following the Waiver's execution, then-owners of

4

Lot 38 built a barn on the premises. (Pls.' SAMF, Dkt. [19-1] ¶ 13.)

On April 10, 1984, the developer-owners of Bald Ridge again recorded Restrictive Covenants Pertaining to Bald Ridge on Lanier ("Second Bald Ridge Declaration"). (Pls.' SAMF, Dkt. [19-1] ¶ 9.) Although the First and Second Bald Ridge Declarations are identical in most respects, the Second Bald Ridge Declaration included the Exhibit A referenced—but not recorded—in the First Bald Ridge Declaration. (See id. ¶ 9.)

After a series of conveyances, Plaintiff Satoor purchased Lot 38 via Special Warranty Deed on November 13, 2008. (Pls.' SAMF, Ex. I, Dkt. [19-1], at I-1.) Plaintiff Satoor subsequently conveyed Lot 38 to Plaintiff Sailak, LLC, an entity created by Plaintiff Satoor, on June 15, 2012. (Pls.' SAMF, Ex. J, Dkt. [19-1], at J-1.) Lot 38 is zoned R2R, or single family residential restricted, under the Forsyth County Unified Development Code ("UDC"). (Def.'s Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried ("Def.'s SOMF"), Dkt. [17-1] ¶ 5.) On June 3, 2016, Plaintiffs applied with Forsyth County for a conditional use permit ("CUP") to build a Hindu temple totaling 11,200 square feet on the R2R-zoned property. (Compl., Dkt. [1] ¶ 18; Def.'s SOMF, Dkt. [17-1] ¶ 9.) The Forsyth County Planning

5

Commission held a public hearing regarding Plaintiffs' CUP application and, after comments by members of the community, recommended denial of Plaintiffs' CUP. (Compl., Dkt. [1] ¶ 23.) Shortly thereafter, Plaintiffs' application was unanimously denied by the Forsyth County Board of Commissioners on February 28, 2017. (Id. ¶ 24.)

Plaintiffs filed their complaint on March 16, 2017, alleging that Defendant violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in its consideration and denial of Plaintiffs' CUP application. Specifically, Plaintiff brought two claims against Defendant under the RLUIPA: (1) a discrimination claim, and (2) a substantial burden claim. (Id. ¶¶ 36–43.) After filing a timely answer, Defendants filed a Motion to Bifurcate Trial [13] on July 14, 2017, based on restrictive covenants allegedly applicable to Lot 38. During a subsequent hearing, the Court denied Defendant's Motion to Bifurcate Trial and requested Defendant instead file a Motion for Partial Summary Judgment to bring before the Court the issue of the applicability of restrictive covenants to Lot 38 of Bald Ridge and any subsequent legal effect the covenants may have, if applicable, on Plaintiffs' claims. (Tr. of the Scheduling Conference Proceedings, Dkt. [18], at 8–9.) Defendant filed the

6

requested Motion for Partial Summary Judgment[17], which the Court now considers.

## Discussion

### I. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a

7

genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over the fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guard. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

8

its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II. Analysis

Defendants move for partial summary judgment, arguing that the restrictive covenants in the Bald Ridge Declarations apply to Lot 38.[1] The Court now examines the issues raised by Defendant in turn.

### A. Applicability of the Restrictive Covenants to Lot 38

Under Georgia law, "the general rule is that the owner of land has the right to use it for any lawful purpose." Douglas v. Wages, 523 S.E.2d 330, 331 (Ga. 1999) (quoting Holbrook v. Davison, 375 S.E.2d 840, 841 (Ga. 1989)). Accordingly, purported land use limitations require clear evidence that is "beyond reasonable doubt of the existence, application, and intent of express restrictive covenants." Roth v. Connor, 510 S.E.2d 550, 553–54 (Ga. Ct. App. 1998). Such limitations "must be clearly established, not only as to the restrictions, but also as to the land restricted." Id. at 554. However,

---

[1] Defendant also makes arguments in reference to Plaintiffs' RLUIPA claim. At this time, the Court limits its inquiry to the applicability of the covenants at issue. Nothing precludes Defendant, however, from challenging Plaintiffs' substantial burden claim again at a later time. Defendant's Motion for Partial Summary Judgment [17] is therefore **DENIED without prejudice** as to Plaintiffs' RLUIPA claim.

9

"[r]estrictive covenants and subdivision plats may be independently recorded and filed of record, . . . [and] such recorded restrictions provide constructive knowledge thereof." Id. at 556. Further, "[a] purchaser of land is conclusively charged with notice of restrictive covenants contained in a deed which constitutes one of his muniments of his own title." Id. (quoting King v. Baker, 445 S.E.2d 129, 129 (Ga. Ct. App. 1994)).

Plaintiff suggests that the lack of "Exhibit A," or legal description, for the First Bald Ridge Declaration renders it invalid as to Lot 38. Plaintiff argues that, because Lot 38 was conveyed in between the recordation of the First Bald Ridge Declaration and the Second Bald Ridge Declaration, the latter declaration—which included the Exhibit A legal description of the restricted properties—was outside the chain of title for Lot 38 and thus does not apply. Plaintiffs' argument fails for two reasons. First, although the First Bald Ridge Declaration did fail to include the Exhibit A mentioned, the Declaration was nonetheless recorded and expressly names the "subdivision known as Bald Ridge on Lanier" as the affected property. (Pls.' SAMF, Ex. D, Dkt. [19-1], at D-1.) Further, even if the First Bald Ridge Declaration is insufficient on its own to provide constructive notice to Plaintiffs, the first deed conveying Lot 38

10

from the owner-developers to its first purchaser explicitly stated that Lot 38 was being sold "subject to subdivision restrictions of record and recorded at Deed Book 236, pages 604–607." (Pls.' SAMF, Ex. E, Dkt. [19-1], at E-1.) Because a property purchaser is charged with notice of restrictive covenants in recorded documents within his chain of title, and because the Declaration was recorded and specifically stated it applied to the Bald Ridge subdivision, the Court finds the restrictive covenants in the First Bald Ridge Declaration applicable to Plaintiffs' Lot 38.

### B. Applicability of the Restrictive Covenants to Plaintiffs' Proposed Construction

The Court further finds that, under the facts before it, the restrictive covenants in the First Bald Ridge Declaration—applicable to Lot 38 for the reasons given above—preclude Plaintiffs' temple construction on the property. Plaintiffs contend the covenants do not prohibit the construction of a religious structure on Lot 38 because the covenants state the lot "shall be used for residential purposes," not that the lots shall be used for residential purposes only. Defendant, in turn, argues this same language is sufficient to bar the construction of Plaintiffs' proposed structure.

"Restrictive covenants are specialized contracts that run with the land." Mitchell v. Cambridge Prop. Owners Ass'n, Inc., 623 S.E.2d 511, 513 (Ga. Ct. App. 2005) (citing Lake Arrowhead Prop. Owners Ass'n, Inc. v. Dalton, 572 S.E.2d 25, 26 (Ga. Ct. App. 2002)). Under Georgia law, the primary goal in interpreting contracts is to "ascertain the intention of the parties." O.C.G.A. § 13-2-3 (2010). "First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms." Mitchell, 623 S.E.2d at 513 (quoting White v. Kaminsky, 610 S.E.2d 542, 544 (Ga. Ct. App. 2004)). In determining the parties' intent, the court considers the entire document. Id. (citing Licker v. Harkleroad, 558 S.E.2d 31, 33 (Ga. Ct. App. 2001)). If the contract is ambiguous, "the court must apply the rules of contract construction to resolve the ambiguity." Id. O.C.G.A. § 13-2-2 lists some of Georgia's rules of construction, including that "[w]ords generally bear their usual and common signification." O.C.G.A. § 13-2-2(2).

It is true that, as Plaintiffs indicate, the First Bald Ridge Declaration does not expressly limit lot use to residential purposes "only." Nor does the document expressly state whether its restrictions prohibit construction of

12

temples or other religious structures. Accordingly, the Court applies the rules of construction to resolve the existing ambiguity. See Mitchell, 623 S.E.2d at 513 (applying the rules of contract construction to resolve ambiguity where the "covenant at issue [did] not expressly state whether its restrictions on the construction or alteration of structures [applied] to a driveway"). Just after stating that the lots "shall be used for residential purposes," paragraph 3 of the First Bald Ridge Declaration goes on to say, "Structures erected, altered, placed or permitted on any lot, shall consist only of one (1) detached single family dwelling not to exceed two stores [sic] in height and one (1) accessory building . . . ." (Id. at D-2. (emphasis added)). Paragraph 4 then states, "The intent of these covenants is to provide for a natural wooded environment. Therefore, alteration of the natural environment on any lot is limited to that which is required for the construction of an approved dwelling, necessary landscaping, and accessory building." (Id.)

Viewing the First Bald Ridge Declaration in its entirety, its language shows that the lots were intended only for residential use. The covenants expressly limit the structures permitted on a lot to one residence and one "accessory building." An "accessory building" is "a building separate from but

13

complementing the main structure on a lot, such as a garage." Black's Law Dictionary (10th ed. 2014). Thus, an accessory building in this context should complement the main structure—the residence—on the lot and conform with the residential use of the lot. See Licker, 558 S.E.2d at 34 n.4 (list of permissible structures, including "a residence, accessory building, tennis court . . . , suggest[ed] proposed structures [were] limited solely to residential purposes"). Plaintiffs' proposed 11,200 square foot religious facility would not complement the residence on Lot 38 but would instead displace it as the main structure. Further, the facility does not conform with the intended residential use of the lot. Accordingly, the Court finds the restrictive covenants in the First Bald Ridge Declaration would preclude construction of Plaintiffs' proposed facility.

C. Applicability of the Waiver

Finally, the Court finds that the Waiver executed on April 1, 1984, does not preclude enforcement of the First Bald Ridge Declaration covenants against Plaintiffs' proposed Hindu temple construction on Lot 38. Plaintiffs argue that the Waiver completely abrogates the restrictions in the First Bald Ridge Declaration or, at minimum, the specifically enumerated paragraphs therein. In

14

contrast, Defendant argues the Waiver relinquishes the enumerated restrictive covenants only insofar as to allow the then-owner to construct a horse barn on Lot 38 for personal enjoyment.

The Court agrees with Defendant. As with the restrictive covenants, the Waiver is a contractual agreement and is thus analyzed according to the same aforementioned legal standards. The Waiver specifically notes that "[i]t is the intent herein to permit the occupants of the home located on Lot 38 to be able to use the property for occupancy of a horse or horses for the personal pleasure of the owner and family members of said lot." (Pls.' SAMF, Ex. F, Dkt. [19-1], at F-1–F-2.) The Waiver further states that it waives the four listed restrictive covenants "in order that Grantees, their heirs and assigns, may use said property for the occupancy on said property for a horse or horses to be used by the resides of Lot 38." (Id. at F-1 (emphasis added).) The language clearly indicates that the scope of the waiver granted was for the purpose of allowing horses to be kept on Lot 38, so the parties' intent is clear. The Court finds that the Waiver does not permit Plaintiffs' proposed temple construction. In sum, the First Bald Ridge Declaration covenants apply to Lot 38, preclude Plaintiffs'

15

proposed temple construction, and are not waived by the 1984 Waiver so as to allow the construction of Plaintiffs' religious facility.

## Conclusion

In accordance with the foregoing, Defendant's Motion for Partial Summary Judgment [17] is **GRANTED** as to the applicability of the restrictive covenants and **DENIED without prejudice** as to Plaintiffs' RLUIPA claim. The parties are **DIRECTED** to confer and propose a schedule as to how to proceed within **21 days**.

**SO ORDERED**, this 19th day of June, 2018.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)